UNITED STATES DISTRICT COURT NORTHERN
DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> HOLCIM (US) INC., <br><br> Defendant. | **Civ. No. 1:21-cv-490 (GTS/DJS)** |

## NOTICE OF MOTION

Plaintiffs United States of America and State of New York, by and through their undersigned

counsel, hereby move this Court for entry of the consent decree lodged in this matter on April 28, 2021

("Consent Decree") as a final judgment in this matter pursuant to Federal Rule of Civil Procedure 58.

Plaintiffs' memorandum of law in support of this motion is attached hereto and filed herewith.

DATED:         August 17, 2021

ANTOINETTE T. BACON
Acting United States Attorney
Northern District of New York


*s/John D. Hoggan, Jr.*
JOHN D. HOGGAN, JR. (BRN 511254)
Assistant United States Attorney
United States Attorney's Office
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Phone: (518) 431-0247


Of Counsel:
Kara E. Murphy
Assistant Regional Counsel
Water and General Law Branch
U.S. Environmental Protection Agency
Region 2

LETITIA A. JAMES
Attorney General of the State of New York


*s/Joseph M. Kowalczyk, Jr.*
JOSEPH M. KOWALCZYK, JR. (BRN 517732)
Assistant Attorney General
State of New York
Office of the Attorney General
The Capitol
Albany, NY  12207-2924
Phone:  (518) 776-2417


Of Counsel:
Anthony Luisi
Regional Attorney, Office of General Counsel
New York State Department of Environmental
Conservation

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF NEW YORK,<br><br>         Plaintiffs,<br><br>   v.<br><br>HOLCIM (US) INC.,<br><br>         Defendant. | **Civ. No. 1:21-cv-490 (GTS/DJS)** |

## <u>MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO ENTER CONSENT DECREE</u>

John D. Hoggan, Jr. (Bar Roll No. 511254)
Assistant US Attorney
Northern District of New York
445 Broadway
Room 218
Albany, NY  12207-2924
(518) 431-0247

Joseph M. Kowalczyk, Jr. (Bar Roll No. 515732)
Assistant Attorney General
State of New York
Office of the Attorney General
The Capitol
Albany, NY  12207-2924
Phone:  (518) 776-2417

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

   1.   Clean Water Act ................................................................................................... 2
   2.   New York Environmental Conservation Law ..................................................... 3
   3.   The Facility and the Violations ............................................................................ 3
   4.   The Complaint ...................................................................................................... 5
   5.   The Proposed Consent Decree ............................................................................. 6
     A.   Compliance Requirements ............................................................................. 6
     B.   New York State Environmental Benefit Project ........................................... 6
     C.   Reservation of Rights .................................................................................... 7

ARGUMENT .................................................................................................................. 7

   1.   Standard of Review .............................................................................................. 7
   2.   The Decree Is Fair, Reasonable, and in the Public Interest ................................ 8
     A.   The Consent Decree is Procedurally Fair ..................................................... 8
     B.   The Consent Decree is Substantively Fair .................................................... 9
     C.   The Consent Decree is Reasonable ............................................................... 9
     D.   The Consent Decree is in the Public Interest .............................................. 10

CONCLUSION ............................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Appalachian Power Co. v. EPA*, 249 F.3d 1032, 1059 (D.C. Cir. 2001) ..................................... 10

*BP Exploration & Oil Co.*, 167 F. Supp. 2d 1045 (N.D. Ind. 2001) ........................................... 10

*Conservation Law Found. of New England, Inc. v. Franklin*, 989 F.2d 54 (1st Cir. 1993) .......... 8

*In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 118 (2d Cir.1992)................................................. 13

*Kozlowski v. Coughlin*, 871 F.2d 241, 244 (2d Cir. 1989) ......................................................... 12

*Patterson v. Newspaper & Mail Deliverers' Union of New York*, 514 F.2d 767 (2d Cir. 1975).... 7

*Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77 (3d Cir. 1982)........................................................ 7

*SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285 (2d Cir. 2014) ............................................. 8

*United States v. Autofina Chemical, Inc.*, No. 01-7087, 2002 WL 1832825, at *5 (E.D. Pa. Aug.

5, 2002) ............................................................................................................................... 13

*United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027 (D. Mass. 1989)............................... 8

*United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990) ........................................ 8, 9

*United States v. City of New York*, 30 F. Supp. 2d 325, 331 (E.D.N.Y. 1998).......................... 12

*United States v. Comunidades Contra la Contaminacion*, 204 F.3d 275 (1st Cir. 2000).............. 9

*United States v. Davis*, 261 F.3d 1 (1st. Cir. 2001) .................................................................... 9

*United States v. District of Columbia*, 933 F. Supp. 42, 50 (D.C. Dist. 1996)............................ 9

*United States v. Rohm & Haas Co.*, 721 F. Supp. 666 (D.N.J. 1989) .......................................... 8

*Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ......................................................... 10

**Statutes**

ECL § 17-0803.............................................................................................................................. 3

28 U.S.C. §§ 516 and 519 ............................................................................................................ 3

33 U.S.C. § 1251(a). ........................................................................................... 2

33 U.S.C. § 1342 ................................................................................................. 3

33 U.S.C. § 1362 ................................................................................................. 2

33 U.S.C. § 1366 ................................................................................................. 3

33 U.S.C. §§ 1311(a), 1342 ................................................................................ 2

ECL § 17-0101 .................................................................................................... 3

ECL §§ 71-1929, 71-1931 .................................................................................. 3

**Rules**

28 C.F.R. § 50.7 .................................................................................................. 2

Fed. R. Civ. P. 58 .......................................................................................... 1, 16

Plaintiffs, the United States of America and the State of New York, by and through their undersigned counsel, respectfully request entry of the consent decree lodged in this matter on April 28, 2021 ("Consent Decree") pursuant to Fed. R. Civ. P. 58, as the proposed decree will fully resolve the causes of action set forth in the complaint against Holcim (US) Inc. ("Defendant" or "Holcim").  More specifically, the Consent Decree addresses the violations of the Clean Water Act ("CWA") and the New York Environmental Conservation Law ("ECL") at the Defendant's Ravena Cement Plant (the "Facility") located at 1916 Route 9W in Ravena, New York.  The Consent Decree requires compliance with State Pollutant Discharge Elimination System ("SPDES") Permit No. NY0005037 (the "SPDES Permit").  Accordingly, the United States (on behalf of the United States Environmental Protection Agency ("EPA")) and the State of New York request that the Court sign the proposed Consent Decree and enter it as a final judgment.[1]

## **INTRODUCTION**

The proposed Consent Decree resolves the claims set forth in the Complaint filed by the United States and the State of New York on April 28, 2021 (Dkt. No. 1). The Complaint alleges that, since at least April 2015, Defendant violated the CWA and Article 17 of the ECL by, *inter alia*, exceeding the effluent limitations in the SPDES Permit and by discharging partially treated leachate to tributaries of the Hudson River.  The Complaint also alleges that Defendant violated the terms of various administrative consent orders between Defendant and the Plaintiffs.

The Consent Decree requires Defendant to pay an $850,000 civil penalty to be split between the Plaintiffs equally. A portion of the State of New York's penalty, or $212,000, will be used to fund a New York State Environmental Benefit Project to improve stormwater

---

[1]  The proposed Consent Decree, including appendices, is attached as an exhibit to the United States' Notice of Lodging (Doc. No. 2), filed on April 28, 2021.

management at Coeymans Landing Park in the Town of Coeymans, New York. Most importantly, the Consent Decree requires Holcim to implement an array of corrective actions to bring the Facility systems into compliance with the applicable laws and regulations, and to prevent future violations of the SPDES Permit.

In accordance with 28 C.F.R. § 50.7 and Paragraph 96 of the proposed Consent Decree, the United States published notice of lodging of the Decree in the *Federal Register* and invited public comment on the decree for a thirty-day period commencing on May 7, 2021. *See* 86 Fed. Reg. 24668-1 (May 7, 2021). The comment period ended on June 6, 2021. The United States received no timely comments on the Consent Decree; however, it did receive untimely public comments from the Clean Air Coalition of Greater Ravena-Coeymans, NY ("CAC").[2]

The Defendant waives formal service requirements and "consents to entry of this Consent Decree without further notice." Consent Decree ¶ 98.

## DISCUSSION

**1. Clean Water Act.**

The objective of the CWA is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters. 33 U.S.C. § 1251(a). To achieve this end, the CWA generally prohibits "the discharge of any pollutants by any person," to waters of the United States, except when done in compliance with other sections of the CWA, including permits issued under CWA Section 402. 33 U.S.C. §§ 1311(a), 1342. The term "discharge of pollutants" includes "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). Authority to bring this action is vested in the United States Department of Justice

---

[2] A copy of CAC's comments are annexed hereto. CAC apparently emailed its comments to pubcomment-ees.enrd@***usdog***.gov instead of "usdoj.gov." Although these comments were not timely received by the United States due to the apparent typographical error in the email address by the sender, the parties have addressed the substance of the comments in Point 2,below.

("DOJ"), on behalf of the EPA, pursuant to 28 U.S.C. §§ 516 and 519, and Section 506 of the

CWA, 33 U.S.C. § 1366, and in the Attorney General of the State of New York, pursuant to ECL

§§ 71-1929, 71-1931.

The principal CWA program authorizing the discharge of pollutants is the National

Pollutant Discharge Elimination System ("NPDES") permit program established by CWA

Section 402, 33 U.S.C. § 1342. Under Section 402 of the CWA, a State with an EPA-approved

NPDES program may issue permits, including stormwater permits, governing the discharge of

pollutants from regulated sources. The State of New York has an EPA-approved NPDES

program which is administered by the New York State Department of Environmental

Conservation ("NYSDEC"). The SPDES Permit was issued pursuant to this program.

## 2.     New York Environmental Conservation Law.

ECL Article 17, entitled "Water Pollution Control," declares that the public policy of

New York is to "require the use of all known available and reasonable methods to prevent and

control pollution of the waters of the state of New York." ECL § 17-0101. Consistent with this

public policy, it is "unlawful to discharge pollutants to the waters of the state from any outlet or

point source" except when done in compliance with a NYSDEC-issued permit, and it is unlawful

to discharge pollutants in excess of the limits set by such permit. ECL §§ 17-0101, 17-0803.

## 3.     The Facility and the Violations.

The Facility is a hydraulic cement manufacturing plant. It discharges stormwater and

process wastewater to, *inter alia*, Coeymans Creek and the Hudson River via twenty (20)

constructed outfalls, as described in its SPDES Permit. NYSDEC issued the SPDES Permit to

Holcim's predecessor-in-interest on December 1, 2000, for operations at the Facility. The

requirements of 40 C.F.R. Part 411 are incorporated into Holcim's SPDES Permit, as issued by

3

NYSDEC, in accordance with Sections 301 and 402 of the CWA. The current version of the SPDES Permit has an effective date of October 1, 2010, and was modified several times, most recently on August 14, 2014. The SPDES Permit was last renewed on October 1, 2015, with an expiration date of September 30, 2020. The SPDES Permit has been administratively extended in accordance with the New York State Administrative Procedures Act ("SAPA").

In November 2011, EPA identified numerous CWA violations at the Facility including unauthorized discharges, operation and maintenance deficiencies, inadequate stormwater best management practices, and numeric effluent limit violations of the SPDES Permit going back to 2004. Holcim's predecessor-in-interest subsequently agreed to enter into an administrative compliance order on consent with EPA, Docket No. CWA-02-2012-3062, dated September 20, 2012, to address the violations and a separate consent agreement and final order, Docket No. CWA- 02-2012-3404, dated September 12, 2012 ("EPA Consent Order), in which it agreed to pay a civil penalty of $120,000 to resolve violations occurring between 2006 and 2011.

On December 12, 2014, NYSDEC issued an administrative order on consent ("AOC I") to Holcim's predecessor citing the Facility for 55 SPDES Permit effluent limit violations between 2011 and 2014, and an unreported sulfuric acid spill. The AOC I included a compliance schedule and a $131,000 civil penalty. On October 9, 2015, NYSDEC issued a second administrative order on consent ("AOC II") for an additional 20 SPDES permit effluent limit violations, including unauthorized discharges of partially treated landfill leachate, and assessed a civil penalty of $118,000, of which $59,000 was to be collected and $59,000 was suspended provided that Defendant complied with the Order, for effluent violations from

2014 through March 2015.  Between April 2015 and the Date of Lodging, the Facility reported

additional SPDES permit violations, as set forth in Appendix A to the Consent Decree.

Since entering into the EPA Consent Order, AOC I, and AOC II, Holcim has made

various improvements at the Facility including but not limited to:  completing upgrades to its

leachate treatment system ("LTS") in 2014 (microfiltration), 2016 (installed parallel LTS), and

2019 (redesigned LTS); completing the demolition and removal of the north and south slurry

basins in June 2018; completing the installation of an impermeable geomembrane-backed French

drain along the entire southern and eastern perimeter of the First Generation landfill ("FGL") at

the end of 2017; implementing an alarming system; completing stormwater best management

practices ("BMPs") improvements at Outfalls 014, 015, and 019 in 2019/2020, including the re-

routing of flows and the installation of a concrete retention basin; implementing an enhanced

outfall inspection program; and implementing certain BMPs at several other stormwater outfalls

including retention ponds, rip/rap, check dams, outlet pipes, and flocculant socks throughout the

Facility.  These improvements have substantially eliminated the pattern of SPDES permit

violations previously observed at the Facility.

**4.     The Complaint**

The Complaint (Dkt. No. 1) alleges that, between April 2015 and August 2020, the

Facility violated the SPDES Permit's numeric effluent limitations 273 times for pollutants such

as biological oxygen demand, fecal coliform, total suspended solids, settleable solids, pH, and

temperature differential and three prior administrative consent orders issued from 2011 to 2015.

The administrative orders document over 150 Permit numeric effluent limitation violations for

similar pollutants as well as unauthorized discharges of an unreported sulfuric acid spill, and

discharges of partially treated landfill leachate to tributaries of the Hudson River, such as Coeyman's Creek and Hannacroix Creek.

**5.      The Proposed Consent Decree.**

The proposed Consent Decree will require Holcim to comply with the Facility's SPDES Permit and with applicable statutes and regulations, pay a $850,000 penalty to be split between the Plaintiffs, and $212,000 of New York's penalty will be used to fund a New York State Environmental Benefits Project.

*A.  Compliance Requirements.*

The proposed Consent Decree will require the Defendant to implement long term measures to achieve compliance with the CWA and all applicable regulations promulgated thereunder. In addition to the mitigation measures already implemented at the Facility, the Consent Decree requires Holcim to:  (1) develop and implement a best management practices plan at the Facility; (2) develop and implement an operations and maintenance plan in compliance with New York state regulations; (3) obtain an independent third party audit of the Facility's compliance with its SPDES permit and applicable regulations; and (4) develop and implement programs and physical improvements for its landfills and leachate treatment systems. Consent Decree ¶¶ 12-25.  Each of these measures is designed to further the overarching obligation of Holcim under the Consent Decree to fully comply with the terms of its SPDES Permit.  Consent Decree ¶ 10.  The proposed Consent Decree requires payment of stipulated penalties for any future violations of the Decree. *Id*. § IX.

*B.  New York State Environmental Benefit Project.*

The decree will require Holcim to provide $212,000 to be used for the implementation of an Environmental Benefit Project by the Town of Coeymans, New York. Consent Decree ¶ 44.

The EBP monies will be expended by the Town as reasonable engineering costs and the Town's share in applying for a 2021 New York State Environmental Facilities Corporation Green Innovation Grant Program ("GIGP") Green Stormwater Infrastructure grant for innovative green stormwater infrastructure practices incorporating bioretention in concert with paving and curbing modifications at Coeymans Landing Park.  This project is intended to reduce harmful stormwater runoff into the Hudson River.

### C.    Reservation of Rights.

The United States and the State of New York reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, as well as all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facility. Consent Decree ¶¶ 78-79.

## ARGUMENT

### 1.    Standard of Review.

Settlements are generally favored, "particularly in an area where voluntary compliance by the parties . . . will contribute significantly toward ultimate achievement of statutory goals." *Patterson v. Newspaper & Mail Deliverers' Union of New York*, 514 F.2d 767, 771 (2d Cir. 1975).

> Voluntary settlement of civil controversies is in high judicial favor. . . . When the effort [to settle] is successful, the parties avoid the expense and delay incidental to litigation of the issues; the court is spared the burdens of a trial and the preparation and proceedings that must forerun it.

*Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 80 (3d Cir. 1982).

Whether to approve the Consent Decree is within the discretion of the Court. The policy favoring settlement, however, "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of [EPA]." *United States v. Cannons Eng'g Corp.*, 720 F.

7

Supp. 1027, 1035 (D. Mass. 1989), aff'd, 899 F.2d 79 (1st Cir. 1990). As noted by the First

Circuit, "[t]he relevant standard, after all, is not whether the settlement is one which the court

itself might have fashioned, or considers as ideal . . . ." *United States v. Cannons Eng'g Corp.*,

899 F.2d 79, 84 (1st Cir. 1990). "If a settlement were required to meet some judicially imposed

platonic ideal, then, of course, the settlement would constitute not a compromise by the parties

but judicial fiat. Respect for litigants, especially the United States, requires the court to play a

much more constrained role." *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 685 (D.N.J.

1989). Finally, the reviewing court may approve or reject the proposed Consent Decree, but the

court does not have the authority to modify the proposed Decree. *Cannons*, 720 F. Supp. at 1036.

**2.      The Decree Is Fair, Reasonable, and in the Public Interest.**

A consent decree should be entered when it is fair, reasonable, and in the public interest.

*See Conservation Law Foundation of New England v. Franklin*, 989 F.2d 54, 58 (1st Cir. 1993);

*Cannons Eng'g Corp.*, 899 F.2d at 84-85; *SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285,

293-94 (2d Cir. 2014).

### A.      The Consent Decree is Procedurally Fair.

"To measure procedural fairness, a court should ordinarily look to the negotiation process

and attempt to gauge its candor, openness, and bargaining balance." *Cannons*, 899 F.2d at 86.

Here, the agreement contained in the Consent Decree is the result of fair and open negotiations

between the Parties. The Parties negotiated the Consent Decree over a period of many months,

during which a significant portion of the corrective action originally requested by EPA and

NYSDEC was implemented by Holcim and demonstrated to be effective.  The terms embodied

within the Consent Decree were the result of multiple meetings between the parties and their

respective subject matter experts.  During these arms-length negotiations, Holcim was ably and

ethically represented by experienced and knowledgeable legal counsel. Therefore, the Decree is procedurally fair.[3]

### B.      The Consent Decree is Substantively Fair.

Substantive fairness is based on "concepts of corrective justice and accountability." *Cannons*, 899 F.2d at 87. EPA and NYSDEC have the experience and expertise to determine what measures Holcim must implement in order to achieve compliance with the applicable laws and regulations. Using that experience and expertise, and taking into account Holcim's specific circumstances, EPA and NYSDEC negotiated the relief in the Compliance Requirements section of the Consent Decree, which is intended to ensure that the Facility operates in compliance with its SPDES Permit. Consent Decree ¶¶ 10, 13, 17.  EPA and NYSDEC are entitled to deference in that regard. *See United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 281 (1st Cir. 2000) ("CUCCO"). Thus, the Consent Decree is substantively fair.

### C.      The Consent Decree is Reasonable.

As relevant here, the reasonableness inquiry addresses the decree's likely efficaciousness as a vehicle for protecting the environment and "the relative strength of the parties' litigating positions." *Cannons*, 899 F.2d at 89-90. The proposed Consent Decree is reasonable because it requires Holcim to implement long term measures to ensure its compliance with its SPDES Permit and the CWA, thereby addressing the violations identified in the Complaint.  Finally, the strength of the Plaintiffs' case is adequately addressed because the violations identified at the Facility will be remedied by the terms of the Consent Decree. *See CUCCO*, 204 F.3d at 281; *United States v. District of Columbia*, 933 F. Supp. 42, 50-51 (D.C. Dist. 1996).

---

[3]  *See United States v. Davis*, 261 F.3d 1, 23 (1st. Cir. 2001) (the procedural fairness requirement was satisfied where no reason existed to doubt consent decrees were result of arm's length, good faith bargaining between sophisticated parties).

9

### D.        The Consent Decree is in the Public Interest.

The proposed Consent Decree is in the public interest and comports with the goals of Congress.[4] The Consent Decree promotes the goals of Congress (and the public interest) by requiring Defendant to comply with the CWA and its implementing regulations, and with the Facility's SPDES Permit. *See* Consent Decree ¶¶ 10, 17. The measures required under the Consent Decree will bring the Facility into compliance with the CWA and pertinent State law and regulation. In addition, the Consent Decree requires Defendant to pay a civil penalty of $850,000, which serves as a substantial deterrent to future violations of the SPDES Permit and applicable law.  *See id.* ¶¶ 8 & 17.  Finally, the Consent Decree furthers the general public policy in favor of settlement to reduce costs to litigants and burdens on the courts.  *See, e.g., Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983).

### E.        The Comments Received Form No Basis for Rejection of the Consent Decree.

The United States received public comments from only one entity pertaining to the Consent Decree — the Clean Air Coalition of Greater Ravena-Coeymans in Albany County, New York ("CAC").  Attachment 1.  Although CAC (apparently) attempted to email its comments to the United States in a timely manner, the comments were not received by the United States until CAC provided the New York Attorney General's office with a copy after the comment period had closed. Notwithstanding this, the United States and the State of New York provide the following response to each of CAC's comments below.  *Appalachian Power Co. v. EPA*, 249 F.3d 1032, 1059 (D.C. Cir. 2001) ("An agency is not required to consider issues and evidence in comments that are not timely filed.").  Respectfully, CAC's comments do not demonstrate that the proposed Consent Decree is

---

[4]   *See BP Exploration & Oil Co.*, 167 F. Supp. 2d 1045, 1054 (N.D. Ind. 2001) ("Where a lawsuit seeks to enforce a statute, the most important factor as to public policy is whether the decree comports with the goals of Congress.") (citing *Sierra Club v. Coca-Cola*, 673 F. Supp. 2d 1555, 1556 (M.D. Fla. 1987)).

unfair, unreasonable, or unlawful; therefore, the Plaintiffs request that the Court enter the Consent Decree as a final judgment.

### 1.    Water Pollution Monitoring and Testing.

CAC's first comment expresses concern that there is no requirement "that [monthly stormwater] inspections be performed by or in the presence of state officials[.]" CAC's comment fails to acknowledge that requiring the permittee to perform and certify such testing is standard practice under the CWA. The CWA, as implemented through the NPDES permitting process, requires permittees, such as Holcim, to perform inspections and take samples, and then submit required results and reports to the EPA or the State that is authorized under the CWA to issue the permit. *See generally,* U.S. EPA, Industrial Stormwater Fact Sheet Series, Sector E: Glass, Clay, Cement, Concrete, and Gypsum Product Manufacturing Facilities (Fed. 2021). As many of the violations addressed in the Consent Decree were identified through the Defendant's own testing and reporting, there is no basis to conclude that the practice should not be continued for the testing here.

Additionally, to confirm that Holcim properly conducts the required inspections and tests and then accurately reports those results, the Consent Decree requires that Holcim certify its work. As specified in Paragraph 36 of the Consent Decree:

> 36.    All Quarterly Reports, any other report, notice, protocol, plan, or any other document submitted by Defendant under this Section shall be signed by the Defendant and include the following certification:
>
> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Consent Decree ¶ 36.[5]

The provisions of the Consent Decree designed to ensure regulatory compliance with the CWA are consistent with the permit issued by NYSDEC to Holcim and with the framework of the CWA. Accordingly, no change to the Consent Decree is necessary.

### 2.    Other Pollution Monitoring and Testing

In its second comment, CAC suggests that the United States should add a provision to the Consent Decree requiring that Holcim conduct "monthly air monitoring inspection of its smoke stacks." Respectfully, this action seeks to address the Facility's violations under the CWA. This enforcement action is not directed at, nor intended to address, the Facility's air emissions. Those emissions are regulated under the Clean Air Act ("CAA") and there is no cause of action related to alleged CAA violations in the Complaint. As such, it would not be appropriate for the United States and the State of New York to include such provisions in a CWA enforcement case. *See generally United States v. City of New York*, 30 F. Supp. 2d 325, 331 (E.D.N.Y. 1998) (holding that before entering a consent decree, the court must be satisfied that the decree "(1) springs from and serves to resolve a dispute within the court's subject-matter jurisdiction; (2) comes within the general scope of the case made by the pleadings; and (3) furthers the objectives of the law upon which the complaint was based" (citing *Kozlowski v. Coughlin*, 871 F.2d 241, 244 (2d Cir. 1989)). Accordingly, no change to the Consent Decree is necessary.

### 3.    Public Information on Recent Pollution

CAC's third comment is that the Consent Decree "should require Holcim to fund a study by an independent research company selected by the AG's office to determine if there was any adverse impact on the fauna and flora caused by Holcim's discharge of polluted water into the Coeymans

---

[5]    As an added safeguard, the Consent Decree further requires that Holcim undergo a facility-wide CWA audit by an independent third-party contractor approved by EPA and NYSDEC that has expertise in Clean Water Act compliance at cement manufacturing facilities. Consent Decree ¶ 15.

and Hannacroix creeks."  Neither the United States nor the State of New York believes that a study to determine whether "any adverse impact" caused by Holcim's alleged non-compliance is necessary or warranted given the facts of this case, and CAC in its comments has provided nothing to suggest otherwise.  The agencies with expertise – EPA and NYSDEC – have determined the appropriate scope of corrective action in this case, and their determinations are entitled to deference.  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 118 (2d Cir.1992) ("Appellate courts ordinarily defer to the agency's expertise and the voluntary agreement of the parties in proposing the settlement."); *see also United States v. Autofina Chemical, Inc.*, No. 01-7087, 2002 WL 1832825, at *5 (E.D. Pa. Aug. 5, 2002) (approving consent decree despite public comments and objections similar to those raised in the present case, noting that "EPA is best placed to balance environmental harms and benefits against each other: the court's discretion to re-weigh the balance is necessarily limited").  Accordingly, no change to the Consent Decree is necessary.

### 4.    State Environmental Benefit Project (EBP) at Coeymans Landing Parking Lot

CAC's final comment expresses concern over the EBP project.  CAC states that it "opposes permitting the Town of Coeymans officials to 'design, engineer, and construct' an EBP to reduce harmful stormwater runoff into the Hudson River."  The comment suggests the proposed order should instead require the Town to consult the Hudson River Estuary Program or the Albany County Stormwater Coalition for advice and also to certify that the work is done to the best possible standard. As justification for opposition to the Town's role regarding the EBP, the comment suggests the Town recently amended a local Clean Air Law to recognize the primary role of State and Federal regulatory agencies for enforcing environmental laws. The comment suggests the rationale behind this local law is the Town lacks experienced staff for enforcing environmental laws. The comment also suggests the EBP doesn't address the pollution that is the subject of the proposed consent decree, isn't clearly more beneficial than other

13

potential projects, and is unnecessary because there may already be some permeable paving and trees separating a parking lot from the river.

The EBP contained in the proposed consent decree is an example of partnership and collaboration between the New York State Office of the Attorney General, NYSDEC and the Town of Coeymans and its consultant. The proposed consent decree provides that the EBP monies will be expended by the Town as reasonable engineering costs and the Town's share in applying for a 2021 New York State Environmental Facilities Corporation (EFC) Green Innovation Grant Program (GIGP) Green Stormwater Infrastructure grant for practices incorporating bioretention in concert with paving and curbing modifications at Coeymans Landing Park.

The 4.2 acre contributing drainage area for the project is predominantly impervious and stormwater directly sheet flows and discharges to the Hudson River. During typical storms, Coeymans landing Riverfront Park, located at the heart of the hamlet of Coeyman's landing, and residential areas flood due to inadequate stormwater infrastructure. This flooding results in pollutant loading of the Hudson River. The EBP has been designed to reduce volume of stormwater entering existing infrastructure to the river by promoting green infrastructure best stormwater management practices, as well improving parking areas and pedestrian access while addressing water quality issues. By reducing impervious cover and providing bioretention areas, bioswales, and stormwater trees, stormwater flows will be reduced and infiltration will be made possible. Implementation of the green infrastructure improvements will reduce stormwater runoff to both Coeymans Creek and the Hudson River. The reduction of stormwater runoff, natural infiltration and filtration will help improve the overall water quality of these receiving water bodies.

Selection of the project involved coordination with the community through discussions at regular Town Board meetings on January 28, 2021 and February 11, 2021. On February 11, 2021, the Town Board approved conceptual project documents and authorized development of the preliminary design. The Town subsequently applied to EFC for a GIGP grant to fund the project. After a competitive application process, on May 12, 2021, EFC announced that the Town had been selected to receive up to $1,000,000 in GIGP funding for bioretention and stormwater management street trees. Accordingly, the $212,000 EBP, in the proposed Consent Decree, is expected to result in approximately $1,212,000 in improvements to Coeymans Landing Park that will directly benefit the waterbodies subject to the alleged violations, as well as enhance the overall economic and social well-being of the people of the State of New York, including residents of the Town of Coeymans. As such, it is clear that the project has been selected in accordance with NYSDEC policy. *See* NYSDEC CP-37, Section III.D.1 ("The Department should give priority to projects that benefit the immediate geographic area ***or community*** where the violation(s) occurred." (emphasis added)). Accordingly, no change to the Consent Decree is necessary.

## CONCLUSION

Defendant has consented to entry of the Decree without further notice, and no changes to

the Consent Decree are warranted based on the public comments received. The settlement is

fair, reasonable, and in the public interest. Therefore, pursuant to Fed. R. Civ. P. 58, the United

States respectfully requests that the Court sign the decree at page 41 and enter it as a final

judgment.

ANTOINETTE T. BACON
Acting United States Attorney
Northern District of New York

NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment & Nat. Resource Div.

LETITIA A. JAMES
Attorney General of the State of New York

*John D. Hoggan, Jr.*

JOHN D. HOGGAN, JR.
Assistant United States Attorney
Bar Roll No. 511254
United States Attorney's Office
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Phone: (518) 431-0247
Fax: (518) 431-0386

s/ Joseph M. Kowalczyk, Jr.

JOSEPH M. KOWALCZYK, JR.
Assistant Attorney General
Bar Roll No. 515732
State of New York
Office of the Attorney General
The Capitol
Albany, NY 12207-2924
Phone: (518) 776-2417
Fax: (518) 650-9363

Of Counsel:

Kara E. Murphy
Assistant Regional Counsel
Water and General Law Branch
U.S. Environmental Protection Agency
Region 2
290 Broadway
New York, NY 10007

Of Counsel:

Anthony Luisi
Regional Attorney, Office of General Counsel
New York State Department of Environmental
Conservation
1130 N. Westcott Road
Schenectady, NY 12306

16

# APPENDIX



**Clean Air Coalition of Greater Ravena-Coeymans, NY**
info@cleanairalbanycounty.org
*sent via email to* pubcomment-ees.enrd@usdoq.gov

Assistant Attorney General
U.S. DOJ-ENRD
P.O. Box 7611
Washington, D.C. 20044-7611                                           May 17, 2021

**RE: proposed consent degree**
***United States and State or New York v. Holcim (UA) Inc.***
***Civil Action No.1:21-cv-490 (GTS-DJS)***

These comments come from the Clean Air Coalition of Greater Ravena-Coeymans in Albany County, New York.  This coalition brings together local citizens who live in the area affected by industrial pollution of the air or water from local industries, including the Holcim cement plant in Ravena, NY, a village in the town of Coeymans.

Since late 2017, members of the Coalition have been working to limit or ban the use of waste as an industrial fuel. Holcim's operation of its cement kilns in Ravena (the "Plant") has been a concern as the Company has repeatedly misled the public about the pollution risks associated with the Plant's operations.  Because of its careless control of air emissions and waste water, Holcim puts the health of local residents and wildlife at risk.

The Town of Coeymans has a population of less than 10,000 people living in about 53 square miles of largely rural land.  The Coeymans and Hannacroix creeks run through the Town as well as through the neighboring towns of Bethlehem and New Baltimore.  Many people own and manage property along these two creeks and where the creeks enter the Hudson River.  Holcim's mismanagement of waste water from the Plant, is consistent with their casual approach to harmful air emissions from burning old tires and other solid waste.  The fact that for seven (7) years the Plant released polluted water into the Coeymans and Hannacroix Creeks while negotiations with the EPA were taking place highlights Holcim Ravena's disregard for the safety and protection of the environment and of those living near the Plant.

The Coalition recognizes that the Plant has been a valuable business in the Town of Coeymans since the 1960s, and that it can function as a good corporate citizen and neighbor.  The Coalition also welcomes the Consent Decree and the $850,000 fine.  However, we believe that the Consent Decree can be improved in order to effectively

encourage the Company to improve its environmental record.  The Coalition suggests that the following be incorporated as part of the Consent Decree:

**(1)  Water Pollution Monitoring and Testing**

The decree requires Holcim to submit to EPA and NYSDEC a Best Management Practices Plan (BMP Plan), which should include at least monthly stormwater inspections and measurements of sediment height (or depth) in the stormwater basins/retention ponds (V. Compliance Requirements, page 8).  Although monthly inspections are a significant improvement from the *status quo*, the decree does not state who is performing such inspections and whether such state officials would be present during these inspections.

The Coalition is concerned that without a specific requirement that this inspection be performed by or in the presence of state officials rather than contractors hired by Holcim that Holcim will manage to manipulate its record in the same way it has done in the past in relation of water and air monitoring.

Another concern is whether such inspections will be announced or unannounced. As a matter of example, the teachers working in the middle and high schools across the street from the Plant are required to undergo two evaluations – one announced and one unannounced – in order to keep their jobs.   Likewise, health inspectors in New York State do not pre-announce their health inspections of food service establishments.  The purpose of unannounced inspections is to prevent the subject of the inspection changing its practices on the eve of the inspection to avoid being caught.  However, the current practices of EPA and DEC air monitoring and inspection of Holcim's smoke stacks, state officials only conduct one annual <u>pre-scheduled</u> 6-hour spot test of the levels of pollution emitted from Holcim's smoke stacks which is pre-announced to the company.  EPA and DEC pre-announced annual inspection allows potential violators to clean up before the inspection, an indulgence not given to health inspectors or teachers.

Given the fact that Holcim has a significant record of environmental related violations – 99 violations since 2000,[1] the Coalition strongly believes that in addition to monthly inspections, state officials should conduct unannounced inspection of Holcim's Plant to ensure full compliance with the Consent Degree.  In addition, the cost of testing the water running through private properties should be absorbed by the Company as part of the Consent Decree.   Local wells may also need to be tested.

**(2)  Other Pollution Monitoring and Testing**

In light of Holcim's significant record of environmentally related violations, the Coalition also believes that the EPA, DEC, along with the New York State Attorney General's Office, should require Holcim to develop a BMP Plan for its Plant to include monthly air monitoring inspection of its smoke stacks.  Although, air pollution is not the subject of this Consent Degree, Holcim's history warrants federal and state officials to

---

[1] https://violationtracker.goodjobsfirst.org/parent/lafargeholcim

monitor the Plant's operations more actively, including both air and water pollution, both of which have historically adversely affected the environment.

Experts agree that the current annual air testing conducted by the EPA and DEC of the Plant's smoke stacks is inadequate because it underestimates emissions during start-up, shut-down and upset conditions. Such testing can yield emissions 1000 times higher than 6-hour testing. A recent example occurred in the Netherlands when dioxin measurements were made on their most recently built state of the art trash incinerator. In this testing, two 4-week-samples yielded 1200 and 480 times higher dioxin emissions than side by side 6 hour tests (Arkenbout, 2017 and Zero Waste Europe, 2018). In Europe, many countries now use tests that sample air continuously for 4-weeks (the AMESA system). This allows for the capture of emissions during start-up, shut-down and upset conditions when the most hazardous emissions are likely to take place. (Arkenbout, 2014).

It is unlikely that the authorities of the Company can truly reassure citizens that the emissions from the Plant are free of hazardous pollution without a more stringent air monitoring test and inspection procedures. Therefore, New York, through its enforcement agencies should adopt the AMESA system for air monitoring of pollution emitted from cement plants and incinerators across New York State.

### (3) Public Information on Recent Pollution

The Consent Decree should require Holcim to fund a study by an independent research company selected by the AG's office to determine if there was any adverse impact on the fauna and flora caused by Holcim's discharge of polluted water into the Coeymans and Hannacroix creeks. The report prepared by such independent company shall be made available and published on Holcim's website for public viewing. To the extent that such independent research finds that Holcim's discharge has adversely affected the fauna and flora living in and near these creeks, Holcim should be ordered to remediate such adverse environmental effects to the fullest.

The Company's lack of care of the environment, allied to its lack of transparency and concern for the well-being of Coeymans residents and wildlife has led to considerable mistrust of the company. Therefore, the Company should take responsibility for remediation of any adverse environmental effects caused by its negligent operations of the Plant in order to build a stronger, more trusting relationship, between the Company and the local community.

### (4) State Environmental Benefit Project (EBP) at Coeymans Landing Parking Lot

Lastly, the Consent Decree includes a sum of $212,000 to be spent by the Town of Coeymans to improve storm water management in the Parking lot of the Coeymans Landing Waterfront Park. The decree states that "The [Environmental Benefit Project ("EBP"] will be designed, engineered, and constructed by the Town to reduce harmful stormwater runoff into the Hudson River (page 21)."

Most recently, the Town of Coeymans amended its Clean Air Law to place the burden of the enforcement of air pollution in the Town in the hands of federal and state agencies responsible to enforce environmental laws.  The rationale given by elected officials for its decision was that the Town simply does not have the expertise or the professionals capable for monitoring and enforcing environmental laws.

The Coalition strongly opposes permitting the Town of Coeymans officials to "design, engineer, and construct" an EBP to reduce harmful stormwater runoff into the Hudson River.  Rather, the Decree should require the Town of Coeymans to engage independent experts from the Hudson River Estuary Program or the Albany County Stormwater Coalition to advise them on the work and certify that it has been done to the best possible standard.  Local residents use the park extensively and should also be consulted before any work begins.

The Coalition also would like to point out that the Environmental Benefit Project does not reflect the pollution that is the subject of the consent decree.  It is not clear why this stormwater project is more beneficial than other possible projects.  The parking area is already a gravel covered area of permeable paving with a row of river trees between the parking and the Hudson.

## **Conclusion**

In conclusion, the Clean Air Coalition of Greater Ravena-Coeymans, wants to thank the authorities for negotiating this conclusion to serious water pollution from LafargeHolcim's operations in our town.  We also hope that some of our comments will be included in the Consent Degree as recommendations, even if they are not part of the official agreement.

Sincerely yours,


*Barbara Heinzen & Carlo de Oliveira*
*on behalf of the Clean Air Coalition of Greater Ravena-Coeymans*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**and STATE OF NEW YORK,** | ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) |
| **v.** | )    Civil Action No.    1:21-CV-490 (GTS-DJS) <br> ) |
| **HOLCIM (US) INC.,** | ) <br> ) <br> ) <br> ) |
| **Defendant.** | ) |

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on August 17, 2021, I electronically filed the foregoing **Notice of Motion** with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

      Joseph M. Kowalczyk, Esq.

      Adam Gerard Sowatzka, Esq.

      Richard T. Marooney, Jr., Esq.

                    */s Amanda Williams*

                    Amanda Williams

                    Legal Assistant